MOMSEN, Assignee, Appellant, vs. ATKINS, Respondent.

SAME, Respondent, vs. SAME, Appellant.

*January 13 — February 2, 1900.*

*Principal and agent: Liability of agent for money loaned: Setoff: Errors of referee, when reviewable: Negligence: Interest.*

1. Defendant's agent, having loaned her money and taken security by way of mortgage on lands, caused the mortgage to be foreclosed, and on the sale bid in and took title to the lands in his own name, without the knowledge of defendant. Subsequently his creditors obtained a judgment for an amount larger than the value of the lands, which was docketed and became a lien thereon. *Held*, that the agent became liable to defendant for the amount due her on such loan, and that such liability might be set off by defendant in an action by the assignee for the benefit of creditors of the agent, to recover for his assignor's services.

2. While it is possible the defendant might, by proceedings in equity, have avoided the judgment lien, she was not obliged to do so, and plaintiff was in no position to claim successfully that she must.

3. Errors of a referee are only reviewable in the appellate court when they are properly presented as the errors of the trial court; and exceptions to the rulings and findings of the referee, to be available, must be renewed and passed upon by the trial court and included in the bill of exceptions.

4. The fact that defendant's agent, in making a loan, relied on the information contained in an application for the loan, together with the abstract of title to the land, a letter from his agent written a short time before, and his own experience and general knowledge acquired in placing loans in the surrounding country, does not show that the agent was guilty of a want of ordinary care in placing the loan or was negligent.

5. Where defendant admitted that she had received plaintiff's itemized account of the services rendered by his assignor as her agent, and

Momsen vs. Atkins.

it further appeared that she knew of the assignment, it was not error to allow interest on the recovery from the date the account was rendered; but defendant's recovery on her counterclaim, which did not accrue until a year and a half afterwards, could not properly be deducted as a setoff as of the date the plaintiff rendered his account..

APPEALS from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed on both appeals.*

*C. T. Hickox,* for the plaintiff.

For the defendant. the cause was submitted on the brief of *Paul D. Carpenter.*

CASSODAY, C. J.   It appears from the record that for several years prior to June 3, 1893, the plaintiff's assignor, Frederick T. Day, was in the habit of loaning and investing moneys for the defendant, and collecting the same, and paying taxes, and rendering services for her in such matters; that June 3, 1893, he made a voluntary assignment for the benefit of his creditors to the plaintiff; that August 2, 1897, *Momsen,* as such assignee, commenced this action to recover for sundry items on account for services and disbursements, in the aggregate amounting to $1,383.13, together with interest thereon from July 1, 1893.

The defendant answered by way of admissions, denials, and counter allegations, and also pleaded and alleged three several counterclaims, and demanded judgment thereon for $6,168.66, with costs.   The plaintiff, by way of reply, traversed and put in issue the counterclaims.   April 29, 1898, the cause was referred to John F. Harper to hear, try, and determine.

The referee reported as of September 30, 1898, and, among other things, found as matters of fact, in effect, that, in pursuance of an understanding with the defendant, Day was to receive a commission from those to whom he loaned the defendant's moneys, but that he was to receive no compensa-

tion from the defendant except two per cent. on all interest
collected by him for her; that in such matters Day acted·
without reporting to or consulting with the defendant; that
June 10, 1889, the defendant placed in Day's hands for fore-
closure a note and mortgage previously invested by him on
land in South Dakota, executed by Winchester Dean, for
$350; that Day caused the same to be foreclosed, and the
land sold thereon was bid off by him August 30, 1889; that
the sheriff's deed on such sale was delivered to Day Octo-
ber 4, 1890, and the same was recorded October, 6, 1890;
that October 21, 1890, Day and wife made and executed a·
quitclaim deed of such land to the defendant, but Day re-
tained possession of the same until the trial of this action;
that the defendant had no knowledge that he had purchased
such land or held such deed until after June 3, 1893; that
December 31, 1894, one Grigsby obtained a judgment against·
Day for $21,128.94, and the same was on that day docketed·
in the county in which such land was situated, and became·
a lien thereon, and destroyed whatever interest and value·
the defendant had in such land; that Day expended on ac-
count of such foreclosure $74.90, which both the referee and
the court disallowed; that, after so taking title to such land·
in his own name, he paid out in the aggregate for taxes on·
such land for the years 1888, 1889, 1890, 1891, and 1892,
$62.06, which the referee and the court disallowed; that,
prior to his taking the title to such land in his own name,
he, as the defendant's agent, paid out in the aggregate for·
taxes on such land for the years 1886 and 1887, $22.46, which
was allowed to him by the referee and the court, but both
refused to allow him $6.71 for penalty incurred for not hav-
ing paid the same in time; that the defendant was entitled
to recover from the plaintiff on her first counterclaim the·
amount of the Winchester Dean loan by reason of such·
judgment, with interest from time it was so docketed to the·
day of such report, amounting to $428.75.   Such findings of·

the referee as to the Winchester Dean loan, and the allow-ances and disallowances on account thereof, were all con-firmed by the court, and the interest on the $350 was com-puted to the date of the court's findings, February 25, 1899, making the amount $437.15.

The referee further found, in effect, that in April, 1885, the defendant became the owner of a note and mortgage for $350 obtained by Day as such agent, executed by one Adam Grimes on land in South Dakota, February 27, 1885, Day relying wholly upon an application signed by Grimes, and upon a letter written in 1884 by Day's agent, Crennan, together with an abstract of title, and Day's experience and general knowledge acquired in placing other loans in the surrounding country; that the letter of Crennan did not describe the land, but only the general character of the sur-rounding country; that many of the material representa-tions contained in the application of Grimes, particularly in regard to the soil and condition, were, at the time when made, and continued to be, false and untrue, and that the facts could have been easily ascertained by an investigation of the land; that August 7, 1890, the defendant placed the Grimes note and mortgage in Daly's hands for foreclosure and collection; that, after Day had been informed by his agent whom he had sent to examine the land that the same was utterly worthless, and not worth the paying of the taxes thereon, nor the foreclosing of the mortgage, and without informing the defendant of the facts, he had the note and mortgage foreclosed, and expended in such foreclosure pro-ceedings $51.10, and paid for taxes on the land for the years 1887, 1888, 1889, 1890, 1891, and 1892, in the aggregate, $116.63, and which expenditures and disbursements were disallowed by the referee because they had been made by him without the exercise of reasonable care, and when he knew the land was worthless, and in violation of his duty as such agent, and by concealing from the defendant the

facts; that the defendant was entitled to recover from the plaintiff on her second counterclaim the amount of the Grimes loan of $350, with interest from August 7, 1890, making the amount at the date of such report $500.09.

The court found that the evidence did not justify the referee's finding that Day, as such agent, had failed to exercise reasonable care in the placing of the Grimes loan, and accordingly vacated and set aside such finding of the referee on the defendant's second counterclaim, and disallowed such counterclaim; and all findings of fact relating to Day's negligence in placing the Grimes loan were by the court vacated and set aside. The referee also found numerous other facts not here in controversy, and hence not necessary to specifically mention, and they were all confirmed by the court, except as stated, and except, also, that the court increased the amount allowed by the referee to the plaintiff for tax disbursements on account of F. I. Fisher's land by adding thereto $105.43, assessed against the unredeemed portion of that land for 1888. The referee found that July 10, 1893, the plaintiff sent to the defendant an itemized statement of her account with Day, showing numerous amounts which the plaintiff then claimed Day had expended in the care and management of her investments, and that the plaintiff was entitled to recover interest at six per cent. from July 10, 1893, upon the several sums found due to the plaintiff from the defendant; and accordingly the court found that the aggregate amount due to the plaintiff on the day and year last mentioned was $911.37, together with interest thereon from July 10, 1893, amounting in all to $1,218.95, from which the court deducted the amount allowed to the defendant on the Winchester Dean counterclaim of $437.15, leaving a balance of $781.80 as the amount due the plaintiff over and above all setoffs, and for which amount the plaintiff was entitled to judgment against the defendant, and ordered judgment to be entered accordingly, with costs of the action.

From certain portions of the judgment so entered each party has appealed to this court.

Counsel for the plaintiff contends that the defendant's first counterclaim, based upon Day's taking title to the land on the foreclosure sale of the Winchester Dean note and mortgage, and then allowing a large judgment against him to become a lien thereon, does not state facts sufficient to constitute a cause of action against the plaintiff, nor to sustain the same as a setoff. Such an objection, after a lengthy trial upon the merits before the referee, and findings by the referee and the court sustaining such claim as a setoff, is unavailing if the findings and evidence in that regard are sufficient to support the judgment. The real point of the contention seems to be that Day took such title in his own name for the benefit of and in trust for the defendant, and hence that the judgment did not become a binding lien thereon as against her. *Davenport v. Stephens*, 95 Wis. 456. Day certainly took the legal title, and the judgment was a lien thereon at law. It may be that the defendant might, by proceedings in equity, have avoided such lien; but she was not obliged to do so, and the plaintiff is in no position to successfully claim that she must. There is another difficulty with such contention on the part of the plaintiff. The plaintiff assigns seven *errors of the referee*, all relating to the Winchester Dean land, including the disallowance of the plaintiff's disbursements on account of the same. Errors of a referee are only reviewable by this court when they are properly presented to this court as errors of the trial court. *Jenkins v. Esterly*, 22 Wis. 128; *Gilbank v. Stephenson*, 30 Wis. 155; *Riley v. Mitchell*, 37 Wis. 612; *McDonnell v. Schricker*, 44 Wis. 327; *Hinz v. Van Dusen*, 95 Wis. 503; *Lederer v. Kohn's Estate*, 100 Wis. 662. Thus, it has been held that, to bring before this court for review exceptions taken before a referee, the record must show that the trial court considered and acted upon such exceptions. *Thornton v. Eaton*, 45 Wis.

618. In other words, exceptions taken to the rulings and findings of the referee must be renewed in and passed upon by the trial court in order to be available in this court. We fail to find in the bill of exceptions any exception to the rulings or findings of the trial court on the part of the plaintiff. Counsel cite the statute which declares that: "When the referee's findings of fact or conclusions of law are set aside or modified by the court no exceptions shall be necessary to enable a full review of *such orders* upon appeal or writ of error." Sec. 2871, Stats. 1898. He also cites the statute which provides that "no exception shall be necessary to review an order properly a part of the judgment roll in the action." Sec. 2872. So the statute provides that intermediate orders or determinations of the trial court which involve the merits, and necessarily affect the judgment, may be reviewed without exceptions. Sec. 3070. The statute also provides that either party may have a bill of exceptions settled in a case tried by jury, court, or referee, showing the exceptions taken, the rulings and decisions of the court or referee, and a statement of exceptions taken, and such other decisions or proceedings as are not otherwise of record. Sec. 2873. This court held many years ago that on an appeal from an order of the trial court refusing to confirm a referee's report, and authorizing the plaintiff to amend his complaint and bring in new parties, this court would presume the order to be correct, in the absence of a bill of exceptions. *Hills v. Seeley,* 37 Wis. 246. In a later case it was *quæred* whether, on an appeal from the judgment in a case tried by a referee, this court would review the evidence, where no exception was taken to the confirmation of the report, although there were exceptions to the referee's findings of fact and conclusions of law. *Monitor I. W. Co. v. Ketchum,* 44 Wis. 126. In a still later case it was held that, where one party moved to confirm and the other to set aside the report of the referee, an order of the court modifying the

report sufficiently disposed of both motions. *Lemke v. Daeg-ling*, 52 Wis. 498. In that case it was also held that the failure of the trial court to pass specifically upon the exceptions taken before the referee and reviewed in that court did not necessitate the reversal of the judgment, as indicated in a former case there cited. *Id.* We find no case authorizing this court to review the findings of the trial court in such a case as this without exceptions thereto incorporated in the bill of exceptions. We find no exception in the record to any ruling of the court in respect to the Winchester Dean mortgage or land.

Counsel for the defendant assigns error because the trial court found that the evidence did not justify the referee in finding that Day, as the defendant's agent, failed to exercise reasonable care in placing the Adam Grimes loan. The general character of the evidence bearing upon the question is sufficiently indicated in the findings of the referee upon that branch of the case. The fact that Day relied upon the information contained in Grimes's application for the loan, the abstract of title to the land, and the letter from Day's agent, written a short time before making the loan, and his own experience and general knowledge acquired in placing other loans in the surrounding country, does not, of itself, in the judgment of this court, show that Day was guilty of a want of ordinary care in placing the loan, nor that he was negligent. We cannot hold that under such circumstances he was bound to go further, and investigate the land and the quality of the soil. The amount of the loan was only $350, and the investment was made eight years before the panic of 1893 and the assignment to the plaintiff. We must hold that the findings and ruling of the trial court in respect to the Grimes loan are sustained by the clear preponderance of the evidence.

Counsel for the defendant contends that it was error to allow interest to the plaintiff from July 10, 1893, on the

$911.37,— the aggregate amount of his account against the defendant, as found by the referee and court. This is partly on the ground that there was at that time no adequate demand on the defendant for the money. But, as indicated, the referee and the court found that on that day the plaintiff did send her an itemized statement of her account with Day, showing numerous amounts which Day had expended in such investments and the care and management of her property. The defendant admitted on cross-examination that she received such statement, and that the aggregate amount was about $4,000. She, of course, knew that Day had made an assignment. The defendant's claim for loss on the Winchester Dean loan did not accrue until about a year and a half afterwards, and hence could not properly be deducted as a setoff as of July 10, 1893. Interest was allowed to the defendant on that claim from the time it accrued. We find no error in the record in that respect.

*By the Court.*— The several portions of the judgment of the superior court of Milwaukee county which have been appealed from by the respective parties are all affirmed.